**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 16, 2019

Mr. Keith L. Altman
Excolo Law, 26700 Lahser Road, Suite 401
Southfield, MI 48033

Mr. Patrick Joseph Carome
Mr. Ari Holtzblatt
Mr. Seth P. Waxman
Wilmer Hale, 1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

Mr. Joseph Abraham Gorman
Ms. Kristin Andrea Linsley
Gibson Dunn, 555 Mission Street, Suitre 3000
San Francisco, CA 94105-0921

Ms. Kelly M. Knoll
Wilson, Sonsini, Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

Mr. Aaron David Mackey
Electronic Frontier Foundation
815 Eddy Street, Suite 312
San Francisco, CA 94109

Mr. Daniel Weininger
17118 Adrian Road
Southfield, MI 48075

Mr. Brian M. Willen
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

      Re:  Case No. 18-1426, *Earl Crosby, et al v. Twitter, Inc., et al*
            Originating Case No. : 2:16-cv-14406

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                          Yours very truly,

                                          Deborah S. Hunt, Clerk

                                          Cathryn Lovely
                                          Deputy Clerk

cc:  Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0073p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

EARL CROSBY, et al.,

    *Plaintiffs-Appellants*,

  *v.*

TWITTER, INC.; GOOGLE, LLC; FACEBOOK, INC.,

    *Defendants-Appellees*.

No. 18-1426

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-14406—David M. Lawson, District Judge.

Argued: January 15, 2019

Decided and Filed: April 16, 2019

Before: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

---

#### COUNSEL

**ARGUED:** Daniel W. Weininger, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellants. Seth P. Waxman, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, D.C., for Appellees. **ON BRIEF:** Daniel W. Weininger, Keith L. Altman, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellants. Seth P. Waxman, Patrick J. Carome, Ari Holtzblatt, WILMER CUTLER PICKERING HALE & DORR LLP, Washington, D.C., Brian M. Willen, WILSON SONSINI GOODRICH & ROSATI, P.C., New York, New York, Kristin A. Linsley, Joseph A. Gorman, GIBSON, DUNN & CRUTCHER LLP, San Francisco, California, for Appellees. Aaron Mackey, ELECTRONIC FRONTIER FOUNDATION, San Francisco, California, for Amicus Curiae.

Case 2:16-cv-14406-DML-DRG ECF No. 61 PageID.1133 Filed 04/16/19 Page 4 of 17
Case: 18-1426 Document: 41 Filed: 04/16/2019 Page: 4 (4 of 17)

No. 18-1426         *Crosby et al. v. Twitter, Inc. et al.*         Page 2

## OPINION

NALBANDIAN, Circuit Judge. This case follows the tragic mass shooting at the Pulse Night Club in Orlando, Florida. In June 2016, Omar Mateen entered the club and opened fire, killing forty-nine people and injuring another fifty-three. Many victims and family members of deceased victims brought this lawsuit seeking damages for their senseless losses. But they did not sue Mateen, the lone terrorist responsible for the shooting. Nor did they sue ISIS, the international terrorist organization that allegedly motivated Mateen through social media. Instead, Plaintiffs filed claims against social media giants Twitter, Facebook, and Google under the Anti-Terrorism Act ("ATA"). According to Plaintiffs, ISIS used Defendants' social media platforms to post propaganda and "virtually recruit" Americans to commit terrorist attacks. This worked on Mateen: he allegedly viewed ISIS-related material online, became "self-radicalized," and carried out the Pulse Night Club shooting. Following the attack, ISIS claimed responsibility. Thus, according to Plaintiffs, Defendants are responsible for Mateen's act of terrorism.

We sympathize with Plaintiffs—they suffered through one of the worst terrorist attacks in American history. "But not everything is redressable in a court." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 386 (7th Cir. 2018). And terrorist attacks present unique difficulties for those injured because the terrorists "directly responsible may be beyond the reach of the court." *Id.* This is one such case. But the absence of Mateen and the inability to hold ISIS responsible cannot create liability elsewhere. Plaintiffs' complaint includes no allegations that Twitter, Facebook, or Google had any direct connection to Mateen or his heinous act. And Plaintiffs do not suggest that Defendants provided "material support" to Mateen. Without these connections, Plaintiffs cannot state a viable claim under the ATA. As a result, we affirm the district court's dismissal of Plaintiffs' claims.

No. 18-1426    *Crosby et al. v. Twitter, Inc. et al.*    Page 3

## I.

Plaintiffs' Amended Complaint controls our analysis. And it starts with details on how the terrorist group, the Islamic State of Iraq and Syria[1] ("ISIS"), uses social media. (*See* Am. Compl., R. 33.) Starting in 2010, ISIS began using Twitter, Facebook, and Google to spread its propaganda and messages of hate. Defendants' platforms allow ISIS to reach a global audience, attracting new recruits and inspiring "lone actor attacks." As of 2014, ISIS has seen success, especially on Twitter—with an estimated 70,000 accounts—and some with as many as 20,000 followers. Plaintiffs provide many examples of ISIS's posts on Defendants' websites—and allege that these posts successfully recruited more than 30,000 foreigners to join ISIS. At the same time, Plaintiffs allege these posts allowed ISIS to spread propaganda and fear. (*Id.* ¶¶ 61–74 (including gruesome photos and videos of attacks, beheadings, and messages to kill Americans "wherever you are").)

Plaintiffs also explain how ISIS uses social media to fund its terrorism. For example, through a Twitter campaign to "[p]articipate in Jihad with your money," ISIS received almost $7,000 in donations. (*Id.* ¶ 57.) Plaintiffs also allege that Defendants profit from ISIS's use of their social media platforms. This occurs by ISIS using Defendants' tools to create targeted ads, or by sharing revenue with ISIS when individuals view content or watch videos. But to be sure, this form of advertising is generally available to any user. And Plaintiffs admit that "Defendants have not created [ISIS's] posting nor have they created the advertisement[s]." (*Id.* ¶ 203.)

Next, Plaintiffs explain how Defendants know that ISIS uses their social media platforms. Plaintiffs rely on news articles from various outlets—such as the New York Times, CNN, Business Insider, and the BBC—to show that ISIS's use of Twitter, Facebook, and YouTube are "widely reported." And despite this knowledge, Plaintiffs allege, Defendants ignore requests to block ISIS and fail to prevent ISIS from using its services. Plaintiffs' main complaint seems to be that Twitter does not take a more proactive approach to find and remove ISIS accounts. For example, Twitter "does not proactively monitor content and . . . reviews only that content which is reported by other users as violating its rules." (*Id.* ¶ 113.) And "[e]ven when Defendants shut

---

[1]ISIS is also known as the Islamic State of Iraq and the Levant ("ISIL"), ad-Dawlah al-Islāmiyah fīl-ʿIrāq wash-Shām ("DAESH"), al-Qaeda in Iraq ("AQI"), or simply the Islamic State ("IS").

Case 2:16-cv-14406-DML-DRG ECF No. 61 PageID.1135 Filed 04/16/19 Page 6 of 17
Case: 18-1426 Document: 41-2 Filed: 04/16/2019 Page: 6 (6 of 17)

No. 18-1426                    *Crosby et al. v. Twitter, Inc. et al.*                    Page 4

down an ISIS-linked account, they do nothing to stop it from springing right back up." (*Id.* ¶ 116.) Instead, Plaintiffs complain that Defendants allow ISIS to use a "simplistic renaming scheme" to create a new account as soon as Twitter bans the old account. (*Id.* ¶¶ 116–119.) The "scheme" is like a game of whack-a-mole: Twitter bans an ISIS account named "DriftOne00146"—but the next day the same ISIS account is back as "DriftOne00147." Twitter then bans the new account—but the next week the same ISIS account appears as "DriftOne150." Apparently, the number in the username reflects how many times Twitter has taken the account down, which has occurred to "DriftOne" more than 150 times. Plaintiffs allege that Twitter could use "a content-neutral algorithm" to stop this practice and prevent ISIS from "rapidly connect[ing] and reconnect[ing]" with its supporters. (*Id.* ¶¶ 126–131.) But because Defendants choose not to use the algorithm, Plaintiffs allege that Defendants "knowing[ly] and reckless[ly] provide[] material support to ISIS." (*Id.* ¶ 131.)

Plaintiffs finally mention Mateen in Paragraph 148 of the Amended Complaint. Mateen entered the Pulse Night Club, killed forty-nine people, and injured another fifty-three. Shortly before the attack, Mateen pledged allegiance to ISIS on Facebook and used "ISIS talking points" from Twitter. The FBI determined that Mateen was "self-radicalized on the Internet and social media." (*Id.* ¶ 193.) This self-radicalization, however, occurred "over a period of several years and [Mateen] decided only recently before the attack to embrace [ISIS]." (*Id.* ¶ 177.) Mateen also "had never been directly in contact with ISIS." (*Id.* ¶ 195.) Still, Mateen watched jihadist speeches online and downloaded jihadist videos and materials to his laptop.

Plaintiffs allege that ISIS's content on Defendants' websites radicalized Mateen and "contribut[ed] to his decision to launch [the] Orlando attack and murder[ ] Plaintiffs' decedents and injur[e] other Plaintiffs." (*Id.* ¶¶ 194, 198.) Plaintiffs claim that this is part of ISIS's plan: to radicalize individuals through social media and to incite terrorist attacks around the world "without the necessity of sending its own operatives." (*Id.* ¶¶ 206–07.) Thus, according to Plaintiffs, an attack by Mateen (or by any individual who views ISIS content online) becomes a de facto attack by ISIS. After the attack, ISIS praised Mateen and announced that the Pulse Night Club shooting "was carried out by an Islamic State fighter." (*Id.* ¶¶ 174–75.) ISIS's social media accounts also recognized Mateen by posting his picture and pictures of the attack. In sum,

No. 18-1426                    *Crosby et al. v. Twitter, Inc. et al.*                    Page 5

the substance of the complaint was that Defendants' platforms were so poorly policed as to afford Mateen encouragement and assistance.

## II.

Plaintiffs filed several claims against Defendants, including (1) aiding and abetting international terrorism under 18 U.S.C. § 2333; (2) conspiracy in furtherance of terrorism; (3) providing material support to terrorists under 18 U.S.C. § 2339A; (4) providing material support and resources to terrorists under 18 U.S.C. § 2339B(a)(1); (5) negligent infliction of emotional distress; and (6) wrongful death. The district court dismissed the entire Amended Complaint. On appeal, Plaintiffs abandon claims two and three.

The district court gave several reasons for dismissal. First, the district court explained that the Pulse Night Club shooting was not an "act of international terrorism." (Corrected Op., R. 58 at 10.) Mateen's "self-radicalization" and "conduct in carrying out the attack" did not have "any transnational component." (*Id.* at 12.) And there are no pleaded facts to show that ISIS— or their online content—"had anything at all directly to do [with Mateen and] the shooting." (*Id.* at 11.) Instead, this "violent and tragic . . . event" was a domestic event: a shooting within the United States, with American victims, and an American shooter. This defeated the federal claims.

Still, the district court analyzed the aiding and abetting claim (also known as "secondary liability"), which extends liability to anyone helping "the person who committed [ ] an act of international terrorism." (*Id.* at 13 (quoting 18 U.S.C. § 2333(d)).) If the Pulse Night Club shooting was an act of international terrorism, Plaintiffs' claims still failed because there were no plausible allegations that ISIS "committed" the shooting—or that Defendants had "any tangible connection" to Mateen. For the same reasons, the district court dismissed the conspiracy claim and the "material support" claims.

The district court concluded its analysis with causation. Disregarding Plaintiffs' other problems, the Amended Complaint still failed to plead "any plausible conclusion that any of defendants' conduct proximately caused the deaths and injuries that resulted from the shooting in Orlando." (*Id.* at 21.) Instead, Plaintiffs alleged only "tenuous connections" between

No. 18-1426     *Crosby et al. v. Twitter, Inc. et al.*     Page 6

Defendants and Plaintiffs' injuries: Defendants' social media platforms, ISIS's posting of material online, and the generalized risk that someone sympathetic to ISIS could, at some point, view this material. (*Id.* at 23.) In other words, Plaintiffs failed to connect Mateen's actions (which caused Plaintiffs' injuries) to Defendants' conduct. And while Plaintiffs perhaps alleged that Defendants allowed ISIS to use their websites, they failed to allege plausibly that Defendants' "furnishing their social media platforms to ISIS caused the attack." (*Id.*) Thus, the lack of proximate cause defeated the federal and state claims.

The district court dismissed the amended complaint with prejudice. And Plaintiffs appealed. "We review de novo the district court's decision to dismiss the complaint." *Olagues v. Timken*, 908 F.3d 200, 202 (6th Cir. 2018). Yet we review for abuse of discretion the "district court's decision whether to permit a plaintiff to amend its complaint." *Winget v. JPMorgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).

## III.

"The ATA affords a civil remedy to persons injured 'by reason of an act of international terrorism.'" *Linde v. Arab Bank, PLC*, 882 F.3d 314, 325 (2d Cir. 2018) (quoting 18 U.S.C. § 2333(a)). Plaintiffs appeal the district court's dismissal of two of their ATA claims—each of which provides a different theory of liability: direct liability for providing "material support" to ISIS; and secondary liability for "aiding and abetting" in the Pulse Night Club shooting. For similar reasons, both claims fail.

### A.

*Direct Liability*. Under 18 U.S.C. § 2339B(a)(1), it is a crime to provide material support to a foreign terrorist organization. And if that material support also qualifies as an act of "international terrorism" under 18 U.S.C. § 2331(1), a plaintiff can recover for injuries that occurred "by reason of" the defendant's conduct. 18 U.S.C. § 2333(a). Here, this theory of direct liability requires Plaintiffs to show that Defendants, by providing social media platforms to ISIS, committed an act of international terrorism. *See Linde*, 882 F.3d at 325–27.

But even if providing routine social media services could qualify as an act of international terrorism[2] (a question we do not answer here), Defendants' liability for providing these services would not be unlimited. Instead, "the ATA ultimately is a tort statute." *Kemper*, 911 F.3d at 390. "That means that causation must be proven before liability is established." *Id.* And causation includes the concept of proximate cause. *Id.* (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–54 (2008)). Thus, Plaintiffs cannot hold Defendants directly liable for their injuries unless there is some causal relationship between Defendants' conduct and the Pulse Night Club shooting.

We know that proximate cause is required under the ATA by looking at the language of the statute, which limits recovery to injuries sustained "*by reason of* an act of international terrorism." 18 U.S.C. § 2333(a) (emphasis added). "[T]he Supreme Court has repeatedly and explicitly held that when Congress uses the phrase 'by reason of' in a statute, it intends to require a showing of proximate cause." *Kemper*, 911 F.3d at 391 (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 267–68 (1992); *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 532–35 (1983); and *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010)). And the Second, Ninth, and D.C. Circuits have all reached the same conclusion: proximate cause is required under the ATA.[3] *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018); *Fields v. Twitter, Inc.*, 881 F.3d 739, 744–45 (9th Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 95–96 (2d Cir. 2013).

---

[2]We are making a big assumption here. For Defendants' conduct to qualify as an act of international terrorism, Plaintiffs must establish that providing routine social media services involve "violent acts or acts dangerous to human life," 18 U.S.C. § 2331(1)(A); are intended to "intimidate or coerce" civilians, influence government policy through "intimidation or coercion," or affect the government through "mass destruction, assassination, or kidnapping," *id.* § 2331(1)(b); *and* must "transcend national boundaries." *Id.* § 2331(1)(C). Any one of which would be a substantial hurdle for Plaintiffs.

[3]Plaintiffs rely on two cases to suggest that a lower causation standard is required: *Linde v. Arab Bank, PLC*, 882 F.3d 314, 318 (2d Cir. 2018), and *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc) ("*Boim III*"). But these cases do not displace proximate cause under the ATA. The Seventh Circuit clarified that *Boim III* should not be read as requiring anything less than traditional proximate cause. *Kemper*, 911 F.3d at 391 ("We first take this opportunity to clarify some language in *Boim III* that might be read to suggest that something less than proximate cause might suffice to prove ATA liability . . . [but] proximate cause is necessary for ATA liability."). And the Second Circuit in *Linde* explicitly required a finding of proximate cause for ATA liability. *See* 882 F.3d at 330–31.

No. 18-1426　　　　　　　　*Crosby et al. v. Twitter, Inc. et al.*　　　　　　　　Page 8

"That said, we know that simply stating that the ATA requires proof of 'proximate cause' does not help much." *Kemper*, 911 F.3d at 392. "Proximate cause is a troublesome phrase. It has a particular meaning in the law but is difficult to define." *Corrigan v. E. W. Bohren Transp. Co.*, 408 F.2d 301, 303 (6th Cir. 1968). And "[a] firm definition for the term 'proximate cause' has escaped judges, lawyers, and legal scholars for centuries." *Kemper*, 911 F.3d at 392. As the Supreme Court explained, "'proximate cause' is shorthand for a concept: Injuries have countless causes, and not all should give rise to legal liability." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (citation omitted); *Paroline v. United States*, 572 U.S. 434, 444 (2014) ("Every event has many causes, however, . . . only some of them are proximate[.]"). Indeed, "[i]n a philosophical sense, the consequences of an act go forward to eternity." *CSX Transp., Inc.*, 564 U.S. at 706–07 (Roberts, J., dissenting). This is known as the "butterfly effect"—where "a butterfly stirring the air today in China can transform storm systems next month in New York." *Aransas Project v. Shaw*, 775 F.3d 641, 657 n.10 (5th Cir. 2014) (per curiam); *see also United States v. Wang*, 222 F.3d 234, 239 n.1 (6th Cir. 2000).

But under the law, a defendant's liability cannot also go forward to eternity. And a butterfly in China is not the proximate cause of New York storms. Instead, proximate cause prevents liability where there is not a sufficient link between the defendant's conduct and the plaintiff's injuries. *See Holmes*, 503 U.S. at 268. So proximate cause requires us to draw a line somewhere in the sand—refusing to extend liability beyond a certain point. *See CSX Transp., Inc.*, 564 U.S. at 692–93 (quoting *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting) ("Because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point.")).

Drawing this line gets to the crux of Plaintiffs' main argument—how should we define proximate cause under the ATA? Plaintiffs ask us to define proximate cause as something less than requiring a "direct link." Instead, Plaintiffs want to extend liability to any "foreseeable" injury that Defendants "could have reasonably anticipated." (Appellants' Br. at 34–35.) Applying that standard here, Plaintiffs argue that the ATA requires no direct connection between Defendants' conduct and the Pulse Night Club shooting. (Reply Br. at 18.) In contrast, Defendants ask us to require a "direct relation" between Defendants' conduct and Plaintiffs'

No. 18-1426            *Crosby et al. v. Twitter, Inc. et al.*            Page 9

injuries. (Appellees' Br. at 37.)  According to Defendants, mere "foreseeability" is not enough—and would allow recovery for even remote causes.  To avoid this, Defendants ask us to require "sufficient directness" between Defendants' conduct and Mateen's terrorist attack.  *See Owens*, 897 F.3d at 273 n.8; *Fields*, 881 F.3d at 745.

But the definition of proximate cause is not a zero-sum game.  As the Seventh Circuit recognized, the debate over foreseeability versus directness "is, to a degree, a pointless debate: directness and foreseeability are logically linked."  *Kemper*, 911 F.3d at 392.  Plaintiffs are correct that "foreseeability" plays a part in proximate cause.  And Defendants are also correct that proximate cause requires some "directness" between the tortious conduct and the injury.  These concepts overlap: "In most cases the more directly related an outcome is to an underlying action, the more likely that the outcome will have been foreseeable, and *vice versa*."  *Id.*

This is perhaps why the Supreme Court endorses a "catch-all approach" to proximate cause.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008).  "Proximate cause . . . is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case.'"  *Id.* (quoting *Holmes*, 503 U.S. at 272 n.20) (internal quotation marks omitted).  Still, we should evaluate proximate cause "with a particular emphasis on the 'demand for some direct relation between the injury asserted and the injurious conduct alleged.'"  *Id.* (quoting *Holmes*, 503 U.S. at 268).  Or as the Seventh Circuit explained, under the ATA, "[i]t is enough to note that all of the factors identified by the parties and our sister circuits—foreseeability, directness, and the substantiality of the defendant's conduct—are relevant to the inquiry."  *Kemper*, 911 F.3d at 392.

The D.C. Circuit has also suggested as much, adopting the Second Circuit's two-part test for proximate cause under the ATA:  (1) whether the defendants' acts were "a 'substantial factor' in the sequence of events" that led to the plaintiffs' injuries; and (2) whether those injuries were "reasonably foreseeable or anticipated as a natural consequence of" defendants' conduct.  *Owens*, 897 F.3d at 273 (citing *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (quoting *Rothstein v. USB AG*, 708 F.3d 82, 91 (2d Cir. 2013))).  In a footnote, the court explained how this test fits with a "direct relation" test.  *Id.* n.8 (citing *Fields*, 881 F.3d at 744–49).  A proximate cause test that requires defendants' conduct to be "'a substantial factor in the

sequence of responsible causation' likewise requires sufficient directness." *Id.* (quoting *Rothstein*, 708 F.3d at 91–92). Said another way, substantiality, directness, and foreseeability are all relevant in a proximate cause determination.

Applying these considerations here, there is not a sufficient link between Defendants' conduct (of allegedly providing social media platforms to ISIS) and Plaintiffs' injuries suffered at the Pulse Night Club (at the hands of Mateen). Plaintiffs' only allegation that connects Mateen and Defendants is that, at some point before the Pulse Night Club shooting, Mateen viewed online content from ISIS and became "self-radicalized." But this is a tenuous connection at best. With the "highly interconnected" nature of social media, the internet, and "modern economic and social life"—we expect Defendants' websites to cause some "ripples of harm" that would "flow far beyond the defendant's misconduct." *Fields*, 881 F.3d at 749. But without more, Defendants do not proximately cause all these potential ripples. The content did not compel Mateen's actions.

Indeed, if we accepted Plaintiffs' argument, Defendants would become liable for seemingly endless acts of modern violence simply because the individual viewed relevant social media content before deciding to commit the violence. For example, one of the articles cited in Plaintiffs' Amended Complaint explains that third parties upload 300 hours of content to YouTube every minute. Laurie Segall, *These Ads Ran Before ISIS Videos* (Mar. 3, 2015 7:09 PM), https://money.cnn.com/2015/03/03/technology/isis-ads-youtube/. And "Twitter, for example, boasts hundreds of millions of users . . . with over 500 million tweets per day. That is 6,000 tweets per second." Nina I. Brown, *Fight Terror, Not Twitter: Insulating Soc. Media from Material Support Claims*, 37 Loy. L.A. Ent. L. Rev. 1, 13 (2017). Defendants do not proximately cause everything that an individual may do after viewing this endless content.[4]

---

[4]Courts appear to be unanimous in this view. *See, e.g., Fields*, 881 F.3d at 749 ("[W]e are troubled by the seemingly boundless litigation risks that would be posed by extending the ATA's bounds as far as foreseeability may reach."); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1178 (N.D. Cal. 2018), *appeal filed*, No. 18-16700 (9th Cir. Sept. 10, 2018) ("While the [complaint] includes detailed allegations regarding the alleged use of YouTube by ISIS and its affiliates, [it] does not allege any facts plausibly connecting the general availability of YouTube with the [Paris] attack itself."); *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 913 (N.D. Cal. 2018), *appeal filed*, No. 18-17192 (9th Cir. Nov. 13, 2018) ("Plaintiffs allege that [the shooter] was 'radicalized by ISIS's use of social media.' However, this conclusory allegation is insufficient to support a plausible claim of proximate causation."); *Cain v. Twitter, Inc.*, No. 17-cv-02506, 2018 WL 4657275, at *2 (N.D. Cal. Sept. 24, 2018) ("Nevertheless, the

Nor can Defendants foresee how every viewer will react to third party content on their platforms. This is especially true where independent criminal acts, like Mateen's, are involved. *See Kemper*, 911 F.3d at 393.

To be sure, this does not mean that Defendants could never proximately cause a terrorist attack through their social media platforms. But Plaintiffs allege no facts connecting Defendants to Mateen or the Pulse Night Club shooting. At most, Plaintiffs allege facts that generally connect Defendants to ISIS. But as the Amended Complaint admits, Mateen—and not ISIS—caused Plaintiffs' injuries. Mateen became self-radicalized "over a period of several years and decided only recently before the attack to embrace [ISIS]." (Am. Compl., R. 33 ¶ 177.) And Mateen "had never been directly in contact with ISIS." (*Id.* ¶ 195.) Without some additional allegation connecting Mateen to Defendants—or ISIS to the Pulse Night Club shooting—Defendants' direct liability claim must fail. Call it what you want, but it was not foreseeable that Defendants' conduct would lead to the Pulse Night Club shooting. Nor did Defendants' conduct play a substantial factor in, or have any direct link to, Mateen's appalling act. As a result, Defendants did not proximately cause the Pulse Night Club shooting or Plaintiffs' injuries. And the ATA direct liability claim fails as a matter of law.

**B.**

*Secondary Liability*. Plaintiffs' secondary liability claim fails for a similar reason. Section 2333(d)(2) imposes liability for aiding and abetting an act of international terrorism. But Plaintiffs must satisfy specific statutory requirements before secondary liability can extend to Defendants. *See* 18 U.S.C. § 2333(d). And here, Plaintiffs cannot meet these requirements where it was Mateen—and not ISIS—who committed the Pulse Night Club shooting.

First, secondary liability requires that an act of international terrorism was "committed, planned, or authorized" by a "foreign terrorist organization." *Id.* § 2333(d)(2) (as designated

---

direct relationship link is missing. Most of the allegations are about ISIS's use of Twitter in general. The relatively few allegations involving Twitter that are specific to the attacks that killed plaintiffs' family members also provide little more than generic statements that some of alleged perpetrators of the attacks were 'active' Twitter users who used the platform to follow [ISIS][.]").

No. 18-1426   *Crosby et al. v. Twitter, Inc. et al.*   Page 12

under 8 U.S.C. § 1189). Mateen, of course, is not a foreign terrorist organization. So Plaintiffs must allege that ISIS "committed, planned, or authorized" the Pulse Night Club shooting.

To get around this requirement, Plaintiffs rely on the same tenuous connection to argue that ISIS was responsible for the shooting: ISIS "virtually recruited" people through online content, Mateen saw this content at some point before the shooting, and Mateen injured Plaintiffs. But as Plaintiffs admit, Mateen—by himself and without ISIS's help—planned and committed the Orlando attack. Mateen was "self-radicalized" and never had any contact with ISIS. (Am. Compl., R. 33 ¶¶ 177, 195.) Nor did ISIS give official permission for (or "authorize") the attack. Instead, ISIS only learned about and approved of the shooting *after* the attack.

As discussed with the lack of proximate cause, the Amended Complaint contains no allegations that ISIS was involved with the Pulse Night Club shooting. To be fair, Plaintiffs do identify hypothetical facts that may help them connect ISIS to a "lone wolf" terrorist attack; such as using "encrypted messaging applications" to play the role of "confidants and coaches," sending direct communications to the attacker, and "remotely guid[ing]" a terrorist through an attack. (*Id.* ¶ 74.) But Plaintiffs make no allegations that ISIS played this role with Mateen. And without more, there are insufficient facts to allege that ISIS "committed, planned, or authorized" the Pulse Night Club shooting.[5]

Second, the ATA extends liability to any person who "aids and abets" the "person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). This is the same problem all over again: Mateen is the person who "committed" the shooting—not ISIS. And Plaintiffs do not allege that Defendants directly helped Mateen.[6] Thus, *even if* Defendants

---

[5]Plaintiffs' inability to connect their injuries to a known terrorist organization also distinguishes *Linde*, where it was undisputed that Hamas carried out the attacks. 882 F.3d at 317, 19 ("The sixteen named plaintiffs . . . are victims, or the relatives of victims, of three terrorist attacks perpetuated in Israel by Hamas[.]"). Nor do Plaintiffs include facts here, such as those in *Linde*, that might allow a jury to infer the required "awareness" to provide substantial assistance. *See id.* at 330 ("For example, certain communications dating from as early as 2001, *i.e.*, before the attacks here at issue, could have alerted the bank that the transfers being requested therein were payments for suicide bombings."); *see also Taamneh*, 343 F. Supp. 3d at 917 (requiring sufficient awareness that, by substantially assisting the terrorist organization, the defendant "was playing a role" in the terrorist activities).

[6]Courts now routinely dismiss ATA claims when the plaintiffs fail to allege a direct link between the defendants and the individual perpetrator. *See, e.g., Copeland v. Twitter, Inc.*, 17-cv-05851, 2018 WL 6251384, at

Case 2:16-cv-14406-DML-DRG ECF No. 61 PageID.1144 Filed 04/16/19 Page 15 of 17
Case: 18-1426 Document: 41-2 Filed: 04/16/2019 Page: 15 (15 of 17)

No. 18-1426 *Crosby et al. v. Twitter, Inc. et al.* Page 13

somehow supported ISIS, and *even if* the shooting were an act of international terrorism, Plaintiffs' ATA claim for secondary liability still fails because Mateen "committed" the terrorist act.[7]

### IV.

*State Law Claims*. This leaves Plaintiffs' state law claims for negligent infliction of emotional distress and wrongful death. But as Plaintiffs concede, these claims also require allegations showing proximate cause between Defendants' conduct and Plaintiffs' injuries sustained at the Pulse Night Club. (*See* Appellants' Br. at 41.) Thus, for the reasons already discussed, the district court properly dismissed Plaintiffs' state law claims.

### V.

Finally, Plaintiffs appeal the district court's decision to dismiss the Amended Complaint with prejudice. According to Plaintiffs, they asked the district court for an opportunity to fix any "shortfalls" in their allegations. And the district court abused its discretion when it "overlooked" their request and denied leave to amend without explanation. Plaintiffs are correct to a point. "Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011). And a district court can abuse its discretion if it denies a plaintiff this opportunity without stating its reasons for doing so. *See Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (per curiam) (citing *Froman v. Davis*, 371 U.S. 178, 182 (1962)).

---

*1, 7 (N.D. Cal. Nov. 29, 2018), *appeal filed*, No. 18-17327 (9th Cir. Dec. 6, 2018) (collecting cases) ("Even if Copeland only needed to allege facts showing that defendants aided and abetted ISIS or ISIS terrorist attacks in general, there are no plausible allegations that *this* attack was carried out by ISIS. Instead, the facts as alleged show that ISIS took credit *after* the attack."); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 886–87 (N.D. Cal. 2017) ("Whatever relationship Defendants' alleged provision of social media services to Hamas might have to Hamas's own operations, the clearest break in the causal chain here lies between Hamas and the Dallas attack. . . . Plaintiffs do not meaningfully allege that Hamas itself carried out the attack, or even that it intended for such an attack to occur."); *see also Linde*, 882 F.3d at 329 (citing *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983) ("[D]efendant must knowingly and substantially assist the principal violation.")).

[7]Plaintiffs' problems do not end here. Even if ISIS "committed, planned, or authorized" the Pulse Night club shooting, Plaintiffs would still have to overcome 47 U.S.C. § 230, which provides broad immunity to "interactive computer services." This is another substantial hurdle for Plaintiffs.

No. 18-1426          *Crosby et al. v. Twitter, Inc. et al.*          Page 14

But this protection is not absolute. There are important procedural requirements to follow. And Plaintiffs skipped a critical one: a formal motion to amend. Indeed, in both cases Plaintiffs rely on, the plaintiffs filed a formal motion for leave to amend the complaint. *Moore v. City of Paducah*, 790 F.2d at 558 ("[Plaintiff] submitted a motion to file still another amended complaint."); *Morse v. McWhorter*, 290 F.3d 795, 798 (6th Cir. 2002) ("[P]laintiffs moved to alter judgment pursuant to Rule 59(e) and sought leave to amend under Rule 15(a)."). And "if a party does not file a motion to amend or a proposed amended complaint, it is not an abuse of discretion for the district court to dismiss the claims with prejudice." *CNH Am. LLC*, 645 F.3d at 795 (citing *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 783 (6th Cir. 2000) ("A review of the docket in this matter reveals that Plaintiffs *never moved for leave to amend their complaint*. Rather, in opposition to the motions to dismiss, Plaintiffs requested that they be permitted to amend the complaint in the event that the Court found it to be deficient.")).

Here, Plaintiffs never moved for leave to file a second amended complaint. Nor did they file a proposed second amended complaint. Instead, Plaintiffs included only a cursory request at the end of their opposition to Defendants' motion to dismiss: "If this Court should find that any of Plaintiffs claims are lacking, Plaintiffs respectfully requests this Court grant leave for Plaintiffs to amend the complaint and this leave should be freely given." (Mem. Opp'n, R. 41 at 49.) Plaintiffs also failed to explain how a second amended complaint would resolve the problems in the first amended complaint. Thus, the district court did not abuse its discretion by dismissing the amended complaint with prejudice.

\*      \*      \*

We affirm the district court's denial of Plaintiffs' claims with prejudice.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 18-1426

EARL CROSBY, et al.,

    Plaintiffs - Appellants,

v.

TWITTER, INC.; GOOGLE, LLC; FACEBOOK, INC.,

    Defendants - Appellees.

**FILED**
Apr 16, 2019
DEBORAH S. HUNT, Clerk

Before: MERRITT, GIBBONS, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of Plaintiffs' claims with prejudice is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk